**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DR. ERICA COLLINS, | ) | |
| Plaintiff, | ) | |
| | ) | No. 06 CV 6651 |
| v. | ) | Judge Blanche M. Manning |
| | ) | |
| COOK COUNTY, and J.W. FAIRMAN, | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Dr. Erica Collins was director of training at the juvenile detention facility run by defendant Cook County. At first, she felt as though her job allowed her to put to good use the advanced degrees she earned in education. But after three years in that position, the county transferred her to the Public Defender's Office, where she often found herself with no job responsibilities at all.

The county contends that it transferred Collins and other management-level employees because the juvenile facility was under fire for not timely implementing court-ordered reforms. But Collins alleges that the real reasons for her transfer were that (1) she had developed lupus, and (2) she testified on behalf of a coworker who was suing Cook County for discrimination.

Collins sued Cook County and a former supervisor, J.W. Fairman, for a variety of violations of her civil rights. The defendants have moved for summary judgment on all of Collins' claims. For the reasons that follow, the motion for summary judgment is granted.

## BACKGROUND

The following facts are taken from the parties' Rule 56.1 statements and are undisputed except where noted. Collins began working as director of training at the Juvenile Temporary Detention Center in December 2003. She was hired during the time that the late John Stroger

was president of the Cook County Board. She was designated as a *Shakman*-exempt employee, which meant that she was not protected against patronage-based employment decisions and, instead, could be fired at-will. As director of training, Collins was responsible for over 500 employees and their training. She was also responsible for helping implement the terms of a Memorandum of Agreement, the culmination of a federal lawsuit brought against Cook County by the American Civil Liberties Union based upon alleged substandard conditions and abusive treatment of juveniles at the facility. *See Doe v. Cook County*, No. 99 CV 3945 (N.D. Ill.)

A few months after being hired, Collins developed lupus and, in April 2004, began receiving chemotherapy. On the occasions when she received chemotherapy, she would stay home from work on Thursday and Friday, and return to work the following Monday. The superintendent of the juvenile facility at the time permitted Collins to work this flexible schedule to accommodate her lupus.

However in July 2004, that superintendent left on account of her own health problems, and J.W. Fairman became acting superintendent of the juvenile facility. Fairman pressured Collins to reveal to one of his deputies the nature of the medical condition that had led the previous superintendent to allow her to work a flexible schedule. When Collins refused, Fairman revoked her flexible schedule. The revocation led Collins to file a charge of disability discrimination with the EEOC in 2004. Collins also reported the revocation of her flexible schedule to the chief of staff for Cook County Board president Stroger. The chief of staff, in turn, called Fairman, after which Fairman reinstated Collins' flexible schedule and provided her with a parking space. Fairman left as acting superintendent in June 2005 when Jerry Robinson became the new superintendent.

On June 12, 2006, Collins gave deposition testimony in a coworker's lawsuit brought against the county and Fairman. The coworker, Frances Melendez, alleged in that suit that the county and Fairman discriminated against her on the basis of her national origin and sex, and also retaliated against her.

A month after providing her deposition testimony, president Stroger became ill and the County Board elected Bobbie Steele to be acting president. At the time, the ACLU was publicly complaining about the juvenile facility's failure to comply with the terms of the Memorandum of Agreement entered in *Doe v. Cook County*. Apparently in response to the negative publicity, Steele reinstated Fairman as superintendent of the juvenile facility. Fairman, in turn, removed those he considered to be the top managers of the juvenile facility, which included three assistant superintendents, the chief financial officer, and Collins. Fairman believed that the removals were necessary because the top management staff was not committed to bringing the juvenile facility into compliance with the Memorandum of Agreement.

Fairman transferred Collins to the office of Public Defender Edwin Burnette. Burnette first attempted to place Collins in the position of Records Administrator, where her primary responsibility would be to clean up files stored in a hallway at the county's criminal courthouse, and then create a better filing system. Upon learning that the job's primary responsibility would be to create a better filing system, Collins cried hysterically. She never actually worked in that position—the defendants contend that she refused it, while Collins contends that the position never materialized because supervisors realized that it did not fit her skills and experience. For the next three months she reported to work at the Public Defender's office, but had nothing to do while Burnette identified a suitable position for her.

Eventually Collins accepted a position as director of the Public Defender's Parent Education Program. However, in that position she had no responsibilities except to read a book that her predecessor had prepared describing the position. In April 2007, Collins expressed unhappiness over her position's lack of responsibilities and obtained a transfer to the Public Defender's Policy Division, where she is currently responsible for rolling out a case management system known as Legal Edge. In her new position, she helps train key staff members as the Legal Edge system is implemented in each division of the Public Defender's office.

In the meantime, Collins sued Cook County and J.W. Fairman for employment discrimination. Specifically, she alleged one count against Cook County under Title VII of the Civil Rights Act of 1964, contending that her transfer from the juvenile facility to the Public Defender's office was in retaliation for offering deposition testimony in her coworker's discrimination case in violation of 42 U.S.C. § 2000e-3(a) (Count I). She also alleged two counts against Cook County under the Americans with Disabilities Act, contending that she was transferred on account of her disability, lupus, in violation of 42 U.S.C. § 12111 (Count II), and in retaliation for filing a charge of disability discrimination in 2004, in violation of 42 U.S.C. § 12203 (Count III). Finally, she alleged two counts under 42 U.S.C. § 1983. In the first, she alleged retaliation under Title VII against Fairman in his individual capacity, based upon her transfer after providing deposition testimony in a coworker's discrimination case (Count IV). In the final count under § 1983, she alleged that Cook County is responsible for Fairman's conduct alleged in Count IV (Count V).

Both Cook County and Fairman have moved for summary judgment on all five counts of Collins' complaint. They contend that they are entitled to summary judgment because Collins

does not meet the definition of either "employee" or "disabled" under Title VII and the ADA, and because she cannot establish a claim of discrimination or retaliation under either the direct or indirect methods. Additionally, they argue that they are entitled to summary judgment on her claims under § 1983 because Collins cannot establish her underlying Title VII and ADA claims and because Fairman is entitled to immunity.

## ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c). The court construes all the facts and the reasonable inferences drawn from those facts in favor of the non-movant. *See Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008). The nonmoving party, however, may not merely rest upon the allegations or details in her pleadings, but instead, must set forth specific facts showing that there is a genuine issue for trial. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. Motion to Strike

Before addressing the arguments in favor of and against granting summary judgment, the court will first address the defendants' motion to strike a number of Collins' responses to their Local Rule 56.1 statements, her statements of additional facts, and supporting exhibits. The bases for the motion to strike include that Collins' statements and exhibits are (a) duplicative, (b) immaterial, (c) inadmissible, (d) unsupported by the part of the record cited, or (e) statements in

affidavits that contradict earlier deposition testimony. The motion is granted in part and denied in part as detailed below.

In reaching its decision on the motion for summary judgment, the court has not found that any of the statements or responses that it relied on were impermissibly duplicative or immaterial. Therefore, the motion to strike on those bases is denied as unnecessary.

The motion to strike Collins' affidavit, prepared after her deposition, is denied. The defendants accurately note that a party cannot create a genuine issue of material fact with an affidavit that contradicts that party's earlier deposition testimony. *See Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005). However, the defendants argue only generally that Collins' affidavit statements contradict her earlier deposition testimony, without specifying exact statements they contend are contradictory. They have therefore presented no basis for concluding that the affidavit statements contradict deposition testimony.

The majority of the remaining motions to strike involve statements, responses, and exhibits that did not factor into the court's decision on the motion for summary judgment. Therefore, the motion to strike those statements, responses, and exhibits is also denied as unnecessary. However, on occasion the objections involved evidence that did factor into the court's analysis of the parties arguments in favor of or against summary judgment. In those instances, the court will address the defendants' objections to the evidence at the point that the evidence factored into the court's decision.

## C.     Retaliation under Title VII (Count I)

In Count I, Collins alleged that she was transferred in retaliation for deposition testimony offered by her in her coworkers' discrimination suit. Defendant Cook County contends that it is

entitled to summary judgment on Count I because Collins cannot show that she meets Title VII's definition of "employee," and cannot set forth a claim of retaliation under either the direct or indirect methods.

### 1. Definition of Employee

Cook County argues that Collins does not meet the definition of "employee" in Title VII, and therefore cannot sue under that statute. Under Title VII, the term "employee" is defined to exclude the following persons:

> any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate advisor with respect to the exercise of the Constitutional or legal powers of that office.

42 U.S.C. § 2000e(f). Cook County contends that Collins falls under the exclusion to the definition of "employee" because (1) she admitted during her deposition in the *Melendez* case that as director of training she was involved in policy development, (2) Fairman and Public Defender Burnette considered her to be part of the juvenile facility's leadership or management staff, and (3) she was a *Shakman*-exempt employee.

To determine whether a plaintiff falls under the exception set out in § 2000e(f), courts apply the *Elrod/Branti* doctrine applicable to patronage bans. *See Americanos v. Carter*, 74 F.3d 138, 144 (7th Cir. 1996) ("the test for determining if someone is an 'employee' under Title VII is essentially indistinguishable from that applied in the political firing context under the *Elrod/Branti* doctrine.") (internal quotation marks and citation omitted). Applying that doctrine, Collins would fall under the exclusion to the definition of employee if her position was one that required complete political loyalty, involved the making of policy and the exercise of political

judgment, required giving political advice to a superior, or provided access to the political superior's confidential, sensitive thoughts. *See Riley v. Blagojevich*, 425 F.3d 357, 359 (7th Cir. 2005).

The facts necessary to resolve the question of whether Collins was an employee as defined in Title VII are largely in dispute. For instance, Cook County has identified evidence indicating that Collins developed policy or exercised judgment, including that Fairman and Burnette considered her to be a part of the management staff and that, on one occasion, Collins testified in a deposition that her job of implementing the Memorandum of Agreement was "part of the policy development." (R.72-1, Ex. I at 14:1-5.)

However, Collins has identified other evidence that, if believed, supports her argument that she did not develop policy. For instance, during the same deposition Collins gave the following answer to a question presented:

Q:     Today do you have any policy development responsibility?

A:     No.

(*Id.* at 12:10-13.) Moreover, to the extent that Collins developed policy, it was not the policy of her superiors, but rather the policy developed jointly by the parties to *Doe v. Cook County* that gave rise to the Memorandum of Agreement. *See Riley*, 425 F.3d at 359.

As for Cook County's argument that Collins cannot sue under Title VII because she was a *Shakman*-exempt employee, the argument is unavailing. Although her status as a *Shakman*-exempt employee may have enabled the county to fire her for political reasons, her status did not allow the county to fire her for a discriminatory reason. *See Grant v. Chicago Park Dist.*, No. 93 CV 3126, 1993 WL 388686, at *6 (N.D. Ill. Sept. 23, 1993) (employee's status as *Shakman*-

exempt did not "give Park District the privilege of discharging him for a discriminatory reason" prohibited by Title VII).

Accordingly, Collins has identified disputed questions of fact over whether she fell under § 2000e(f)'s exception to the definition of employee under Title VII, which is all she needed to do in order to survive Cook County's motion for summary judgment on this issue.

### 2. *Direct Method*

Under Title VII, an employer may not discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A claim of retaliation under Title VII may be established under either the direct or indirect method. Under the direct method, the plaintiff may establish a claim of retaliation by showing that she (1) engaged in a statutorily protected activity, (2) suffered an adverse employment action, and that (3) there was a causal connection between the protected activity and the adverse employment action. *See Amrehein v. Health Care Service Corp.*, — F.3d —, No. 07-1460, 2008 WL 4613877, at *3 (7th Cir. Oct. 20, 2008).

Cook County does not dispute that Collins engaged in a statutorily protected activity when she testified during a deposition in her coworkers' employment discrimination lawsuit. However, it does contend that she cannot show that her transfer was an adverse employment action or that any causal connection exists between her deposition testimony and her transfer.

### a. Adverse Employment Action

An adverse employment action must be *materially* adverse, more than a mere inconvenience or minor annoyance. *See McHenry v. Milwaukee Co.*, 539 F.3d 573, 586-87 (7th Cir. 2008). A "materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *de la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 685-86 (7th Cir. 2008) (internal quotation marks and citation omitted). At "minimum, the employee must be able to show a quantitative or qualitative change in the terms or conditions of employment." *Id.* at 686.

Cook County argues that Collins' transfer from the juvenile facility to the Public Defender's office was not materially adverse because the first job they offered her—Records Administrator—was a management-type position that offered the same title, pay grade, and salary. But whether a transfer is materially adverse is not measured by title and pay alone. *See Herrnreiter v. Chi. Housing Auth.*, 315 F.3d 742, 744 (7th Cir. 2002). Other relevant factors include whether the new position involves diminished responsibilities preventing the employee from using her skills and experience so that those skills may atrophy. *Id.*

During her deposition, Collins testified that the Records Administrator position that was presented to her would have involved little more than organizing files that littered a courthouse hallway. Her testimony therefore creates a disputed question of fact over whether the Records Administrator job would have been a materially adverse transfer. *See Basith v. Cook County*, 241 F.3d 919, 933 (7th Cir. 2001) ("The question whether a change in an employee's job or

working conditions is materially adverse, rather than essentially neutral, is one of fact ... and so can be resolved on summary judgment only if the question is not fairly contestable.") (internal quotation marks and citation omitted).

Collins did not ultimately work in that position, and did nothing for three months while her supervisors at the Public Defender's office decided where to place her. Eventually they offered, and she accepted, a position as director of the Public Defender's Parent Education Program. But, again, Collins has identified evidence that the position had no responsibilities except to read a book that her predecessor had prepared describing the position. As a result, from November 2006 to April 2007, she contends that she essentially did nothing. Collins has therefore identified sufficient evidence that her transfer from the position of Director of Training was materially adverse. *See Herrnreiter*, 315 F.3d at 744 (evidence that employee was transferred into job where her skills and experience are no longer utilized creates disputed question of fact of whether the transfer was materially adverse).

### b.    Causal Connection

To establish a claim of retaliation under the direct method, Collins must also show a causal connection between the deposition testimony she gave in the *Melendez* case and her transfer. She attempts to meet that burden based upon the suspicious timing of her transfer, coming just two months after offering deposition testimony in the *Melendez* case.

The Seventh Circuit has offered conflicting guidance on whether suspicious timing alone establishes a causal connection. Some cases state that evidence of suspicious timing alone satisfies the plaintiff's burden "depending of course on its strength in relation to whatever other evidence is in the case". *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994).

Other cases state definitively that evidence of suspicious timing alone is insufficient to establish a causal connection. *See Springer v. Durflinger*, 518 F.3d 479, 485 (7th Cir. 2008) (suspicious timing alone is not enough to create a material issue of fact).

The court need not attempt to resolve this apparentl conflict, however. Even if suspicious timing alone was sufficient to establish a causal connection, Cook County would nevertheless be entitled to summary judgment if it presents unrebutted evidence that it would have transferred Collins even in the absence of any retaliatory motive. *See Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 771 (7th Cir. 2008). Cook County has presented evidence of a non-retaliatory reason for transferring Collins: Fairman's decision to rid the juvenile facility of all the management-level employees he believed were responsible for the facility's failure to come into compliance with the Memorandum of Agreement.

The question then becomes is Cook County's evidence of a non-retaliatory reason for transferring Collins unrebutted? In her responses to the defendants' Rule 56.1 statements of fact, Collins does not dispute that Fairman considered her to be part of the "top management staff" at the juvenile facility and that Fairman believed that the top management staff was not committed to coming into compliance with the Memorandum of Agreement and should therefore be removed. (R.71 at 11-12) (responses to statements 43 and 44). Instead, she disputes only whether Fairman's beliefs were accurate. But as the Seventh Circuit put it in *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 824 (7th Cir. 2006), Collins "does not comprehend [her] legal burden." She must show that Fairman's beliefs were not genuine, not merely that his beliefs were inaccurate. *Id.* (court's role is solely to assess whether the justifications for an

adverse employment action were honest, not whether they were accurate, well-considered, or wise).

Moreover, the evidence with which Collins attempts to rebut Fairman's beliefs is inadmissible. The evidence consists of deposition testimony of Jerry Robinson (a former juvenile facility superintendent), the Agreed Supplemental Order to the Memorandum of Agreement in *Doe v. Cook County*, Collins' payroll records, and an organizational chart for the juvenile facility. The court will address the admissibility of each in turn.

i.      Deposition testimony of Jerry Robinson

In his deposition testimony, Robinson recalls statements made to him by David Rouse, a consultant in *Doe v. Cook County* who helped formulate improvements for the juvenile facility. According to Robinson, Rouse spoke favorably about Collins' work performance at the juvenile facility. However, Robinson's testimony about statements made to him by Rouse are classic hearsay, inadmissible to prove the truth of the matter asserted. *See* Fed. R. Evid. 802; *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 631-32 (7th Cir. 2006).

ii.      Agreed Supplemental Order in *Doe v. Cook County*

Attached to the Agreed Supplemental Order entered in *Doe v. Cook County* is an appendix co-authored by Rouse, in which he discusses Collins' successes in improving the training program at the juvenile facility. Although the court can take judicial notice of the existence of the Agreed Supplemental Order entered in *Doe v. Cook County*, it cannot take judicial notice of the truth of the matters asserted in the document. *See General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 n.6 (7th Cir. 1997) (matters asserted in documents filed with the court may be "disputable and usually are disputed").

Accordingly, the statements are inadmissible.

          iii.        Payroll Records and Organizational Chart

Finally, Collins cites to her own payroll records and an organizational chart of the juvenile facility. According to Collins, the payroll records and chart demonstrate that as director of training, she was one level lower in the organizational hierarchy than any of the other persons that Fairman removed from the juvenile facility. However, Collins has offered nothing to authenticate these documents. Moreover, as a result of the lack of authentication, the court cannot know whether the organizational hierarchy depicted on the chart accurately depicts the hierarchy at the time of Collins' transfer. Accordingly, as things stand the chart is of little evidentiary value.

Evidence submitted at summary judgment must be admissible at trial under the Federal Rules of Evidence. *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). Authentication "does not erect a particularly high hurdle" to admissibility. *Bledsoe v. Potter,* 03 C 3890, 2005 WL 2230188, at *2 n.1 (N.D. Ill. Sept. 7, 2005) (citing *United States v. Dhinsa*, 243 F.3d 635, 658-59 (2d Cir. 2001) (citing Fed. R. Evid. 901). Federal Rule of Evidence 901 provides that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). "The party offering the evidence is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *Boim v. Quranic Literary Inst.*, 340 F. Supp. 2d 885, 915 (N.D. Ill. 2004) (citation omitted); *accord Stringel v. Methodist Hosp. of Ind., Inc.*, 89 F.3d 415, 420 (7th Cir. 1996).

As a consequence of Collins' failure even to attempt to establish the authenticity of these documents, the documents are inadmissible. *See* Fed. R. Evid. 901(a). Therefore, Collins cannot rely on them to rebut the honesty of Fairman's stated belief that Collins was among the management team that failed to comply with the Memorandum of Agreement and transferred her for that reason.

In summary, Collins has identified no admissible evidence to rebut Cook County's evidence that it would have transferred her even if it had no retaliatory motive. Accordingly, Collins cannot establish a claim of retaliation under Title VII under the direct method. The court therefore turns to whether Collins can establish a claim of Title VII retaliation under the indirect method.

### 3. *Indirect Method*

To establish a claim of retaliation under the indirect method, Collins must establish a *prima facie* case of discrimination by showing that (1) she engaged in a protected activity, (2) she suffered a materially adverse employment action, (3) she was meeting her employer's legitimate expectations, and (4) she was treated less favorably than similarly-situated employees. *See Amrehein,* 2008 WL 4613877, at *4. If Collins succeeds in establishing a *prima facie* case, the burden then shifts to Cook County to identify a legitimate, non-discriminatory reason for Collins' transfer. *Id.* If Cook County identifies a legitimate reason for its action, then the burden returns to Collins to show that the proffered reason was mere pretext for retaliating against her. *Id.*

The court concluded under its analysis of Collins' claim under the direct method that she had identified evidence that she engaged in a protected activity and suffered a materially adverse employment action. Normally, then, the court would proceed to examine whether Collins also

identified admissible evidence relevant to the remaining elements of her *prima facie* case.

However, whether she has identified such evidence is of no moment because Collins' attempt to navigate the burden-shifting indirect method falters on the issue of pretext. Specifically, the court previously determined when analyzing Collins' claim under the direct method that she cannot rebut Cook County's non-discriminatory reason for transferring her—Fairman's belief that she was a member of the management team that had failed to comply with the Memorandum of Agreement.

As discussed in greater detail above, Collins attempted to rebut the non-discriminatory reason with evidence that Fairman's beliefs were inaccurate, for instance, evidence that she was not a management-level employee or that her department had made progress in complying with the Memorandum of Agreement. But her attempts were misplaced because she needed to show that Fairman's beliefs were insincere rather than merely incorrect. *See Hague*, 436 F.3d at 824. Moreover, as discussed above, her rebuttal evidence is inadmissible.

Collins has failed to establish a claim of Title VII retaliation under either the direct or indirect method, and therefore Cook County's motion for summary judgment on that claim (Count I) is granted.

**D.  Discrimination under the Americans with Disabilities Act  (Count II)**

Next, Cook County moves for summary judgment on Collins' claim that she was transferred on account of her disability—lupus—in violation of the Americans with Disabilities Act. She has not pressed a failure to accommodate claim, and neither party has discussed whether Collins has established a discrimination claim under the direct method. Accordingly, the

court will focus solely on whether Collins has established a discrimination claim under the indirect method.

To establish a claim of disability discrimination under the indirect method, Collins must establish a *prima facie* case of discrimination by showing that (1) she meets the ADA's definition of disabled, (2) she was meeting her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly-situated non-disabled employees were treated more favorably. *See Timmons v. GMC*, 469 F.3d 1122, 1126 (7th Cir. 2006). If Collins succeeds in establishing a *prima facie* case, the burden shifts to Cook County to identify a legitimate, non-discriminatory reason for the adverse employment action (Collins' transfer). *Id.* If Cook County succeeds, the burden returns to Collins to show that Cook County's legitimate reason was mere pretext for discrimination. *Id.*

Once again, the court would normally begin by analyzing whether Collins has established a *prima facie* case of disability discrimination. But it need not do so because, as detailed during the court's discussion of Collins' Title VII retaliation claim, her attempt to establish a claim under the indirect method will ultimately falter on the issue of pretext. Specifically, she cannot show that Cook County's non-discriminatory reason for transferring her—Fairman's decision to clear out the management staff—was mere pretext for discrimination.

Because Collins has failed to establish pretext in support of her disability discrimination claim, Cook County's motion for summary judgment on that claim (Count II) is granted.

**E.      Retaliation under the Americans with Disabilities Act  (Count III)**

Cook County has also moved for summary judgment on Collins' claim that she was transferred in 2006 in retaliation for having filed a charge of disability discrimination in 2004. In

that charge, Collins had alleged that Fairman eliminated the flexible work schedule that a previous superintendent had permitted to accommodate Collins' disability. Collins abandoned the charge after Fairman reinstated the flexible work schedule.

Again, the parties have focused solely on whether Collins has established her claim under the indirect method, and so too will the court. The indirect method allows a plaintiff to establish a claim of retaliation under the ADA much as she would under Title VII. First, she must identify evidence that (1) she engaged in a protected activity, (2) she was subject to an adverse employment action, (3) she met her employer's reasonable expectations, and (4) similarly-situated employees who did not engage in the protected activity were treated more favorably. *See Squibb v. Mem. Med. Ctr.*, 497 F.3d 775, 788 (7th Cir. 2007). If she succeeds, the burden shifts to the defendant to identify a legitimate, non-retaliatory reason for the adverse employment action. *Id.* If it meets that burden, the burden returns to the plaintiff to show that the non-retaliatory reason offered for transferring her was not an honest reason but, rather, was merely pretextual. *Id.*

As with her Title VII and disability discrimination claims, Collins cannot succeed in establishing a claim of retaliation under the ADA because she cannot show pretext. For the reasons discussed above, the evidence she has identified is inadmissible and, in any event, does not address the honesty of Fairman's proffered reasons for transferring her.

Had Collins attempted to establish retaliation under the ADA under the direct method, she would have fared no better. The span of time between her protected conduct—filing a charge in 2004—and the adverse employment action alleged—her 2006 transfer—is simply too great to establish a causal connection. *Id.* (two-year period between the plaintiff's filing of a charge of

discrimination and her termination is insufficient circumstantial evidence, standing alone, of a causal connection between the two events).

Because Collins has failed to establish pretext in support of her retaliation claim under the ADA, Cook County's motion for summary judgment on that claim (Count III) is granted.

**F.      Section 1983 Claims Against Fairman (Count IV) and Cook County (Count V)**

Finally, the defendants move for summary judgment on Collins' claims against Fairman and Cook County which Collins brought under 42 U.S.C. § 1983. Under § 1983, state government employees can sue their employer for violations of their rights under "the Constitution and laws." 42 U.S.C. § 1983. Claims of discrimination under § 1983 may be brought in addition to any claims an employee has under Title VII or the ADA. *See Trigg v. Fort Wayne Community Schs.*, 766 F.2d 299, 302 (7th Cir. 1985). Plaintiffs survive summary judgment on a claim under § 1983 in the same way they survive summary judgment on claims under Title VII or the ADA. *See, e.g., Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1037-38 (7th Cir. 2003) ("[T]he same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection.") (internal quotation marks and citation omitted).

The sole argument that Collins presents that she has sufficiently established claims under § 1983 is as follows: "Plaintiff has already established a claim for retaliation under Title VII (Count I), discrimination under the ADA (Count II), and retaliation under the ADA (Count III). Accordingly, Plaintiff has properly set forth all *prima facie* elements necessary for a claim pursuant to § 1983." (R.73 at 15.)

But as discussed above, Collins has in fact failed to establish claims of retaliation under either the direct or indirect method, or discrimination under the indirect method (the only method

she tried).  Accordingly, her argument that she has established claims under § 1983 for the same reasons that she established claims under Title VII and the ADA is unavailing and the defendants are entitled to summary judgment on Counts IV and V.

## CONCLUSION

For the reasons stated, the defendants' motion for summary judgment [87-1] is granted. The motion to strike [95-1] is granted in part and denied in part as described above.  The clerk is directed to enter a Rule 58 judgment and terminate this case from the court's docket.


ENTER:

DATE:  November 14, 2008

Blanche M. Manning
United States District Judge